| | | |
|---|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| *v.* | ) ) | No. 1:04-cv-273 |
| | ) | *Edgar* |
| ROAD ONE, INC. and MILLER INDUSTRIES, INC., | ) ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM

Plaintiff Transcontinental Insurance Company ("Transcontinental") brings this claim against defendants Road One, Inc. ("Road One") and Miller Industries, Inc. ("Miller Industries") for damages it alleges it sustained due to Road One's breach of its obligations under certain insurance policies ("Insurance Policies") issued by Transcontinental to Road One. [Court Doc. No. 1-1]. Transcontinental claims that Road One failed to reimburse Transcontinental for deductibles amounting to $896,027.58 that Transcontinental paid on behalf of Road One pursuant to the Insurance Policies. Road One has since filed for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 et seq. [Court Doc. No. 48].

Defendant Miller Industries moves for summary judgment dismissal of Transcontinental's claims against it and asserts that as Road One's parent corporation, it is not liable for any debts Road One owes to Transcontinental. [Court Doc. No. 32-1]. Transcontinental opposes the motion for summary judgment claiming that material issues of fact exist regarding whether Road One's corporate veil should be pierced and Miller Industries should be liable for Road One's debts. [Court Doc. No. 44-1].

After reviewing the record in the light most favorable to Transcontinental, the Court concludes that issues of material fact remain regarding whether Road One's corporate veil should be pierced. Therefore, Miller Industries' motion for summary judgment will be DENIED.

## I.      Background

The facts in the instant action are far from clear, but viewing them in the light most favorable to Transcontinental, they appear to be as follows. Transcontinental is a New York corporation with its principal offices located in Chicago, Illinois. [Court Doc. No. 1-1]. Transcontinental is licensed to do business in Tennessee. Road One is a Delaware corporation with its principal offices in Tennessee. Road One, a wholly-owned subsidiary of Miller Industries, recently applied for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 et seq. [Court Doc. No. 48]. Miller Industries was formed in 1994 and is a holding company, as well as the parent company of Road One. [Court Doc. No. 32-2, Affidavit of Vincent Mish ("Mish Aff."), ¶ 5; Court Doc. No. 46-3, Deposition of James Vincent Mish ("Mish Dep."), p. 11]. Miller Industries is incorporated in Tennessee. [Court Doc. No. 1-1]. It is a publicly held corporation that is listed on the New York Stock Exchange. Mish Aff., ¶ 8. Miller Industries' principal offices are located in Tennessee.

Road One began operating in 1997 and provided towing and transportation services through towing services located throughout the country. [Court Doc. No. 32-3, Affidavit of John Maynord ("Maynord Aff."), ¶¶ 5, 7]. Road One was "the administrative entity for the towing services division" of Miller Industries. [Court Doc. No. 46-3, Deposition of John Maynord ("Maynord Dep."), p. 12]. Road One owned fewer than ten towing services companies. *Id.*

Following Road One's commencement of operations, Miller Industries began acquiring other towing services operations around the country. At one point in time, Miller Industries owned up to 110 or 115 separate towing services operations. *Id.* at 15. Road One managed its subsidiary towing services operations, as well as the subsidiary towing operations of Miller Industries. *Id.* at pp. 12-20. Mr. Maynord testified at his deposition that paychecks for all of Road One's and Miller Industries' towing services subsidiaries came from one "central payroll account." *Id.* at pp. 13-16. So a paycheck for an employee at the subsidiary Good Mechanic Auto in Cleveland, Ohio would be drawn from the central payroll account for Road One and all the other Road One and Miller Industries towing service subsidiaries. *Id.*

It appears that at some point Miller Industries and Miller Industries Towing Equipment Inc., another subsidiary of Miller Industries, entered into a revolving credit agreement with Bank of America. [Court Doc. No. 46-4, Collective Exhibit 2, p. 12]. In July of 1999, Mr. Badgley as the sole director of Road One and its and Miller Industries' towing services subsidiaries, gave consent for himself, Vincent Mish and Frank Madonia, as officers of the parent corporation of Miller Industries, to

> execute and deliver any and all certificates, instruments, agreements, and other documents as such officer deems necessary, reasonable or appropriate to consummate the transactions contemplated by the Credit Documents [relating to the revolving credit], including, without limitation, security agreements, negative pledge agreements, cash collateral agreements, guaranties, promissory notes, mortgages and amendments to existing mortgages . . .

*Id.*

For the calendar year 2001 Road One negotiated the Insurance Policies with Transcontinental through an insurance brokerage company, Marsh McClennan. Maynord Aff., ¶ 9. Miller Industries maintains that Road One negotiated the Insurance Policies with

3

Transcontinental without any involvement from Miller Industries. Maynord Aff., ¶ 10. Miller

Industries maintained separate insurance policies from Road One and did not maintain insurance

contracts with Transcontinental. *Id.* at ¶ 10.

It is unclear which individual at Road One negotiated the contract with Transcontinental,

but Transcontinental's evidence suggests that Frank Madonia signed the Insurance Policies and

was the main contact for the Insurance Policies. [Court Doc. No. 45, Affidavit of Gwen Young

("Young Aff."), Ex. A, pp. 27-32].[1] The towing insurance application signed by Frank Madonia

on February 22, 2001 lists Frank Madonia as the primary contact, Executive Vice President,

Secretary, and General Counsel for Road One. *Id.* It also lists Jeffrey Badgley as the President

and Chief Executive Officer ("CEO") and Vincent Mish as the Vice President, Treasurer, and

Chief Financial Officer ("CFO"). *Id.* Mr. Madonia admits to helping to negotiate insurance for

Road One at one point in time. [Court Doc. No. 46-3, Deposition of Frank Madonia ("Madonia

Dep."), pp. 58-59]. Mr. Madonia is also recognized as the general counsel for Miller Industries.

Maynord Dep., p. 18.

At the time Transcontinental issued the Insurance Policies to Road One, Road One's

offices were located at 7704 Basswood Drive, Chattanooga, Tennessee and Miller Industries'

offices were located at 8503 Hilltop Drive, Ooltewah, Tennessee. Maynord Aff., ¶ 11.

---

[1] Miller Industries argues that this Court should not consider the Affidavit of Gwen Young because she did
not appear on Transcontinental's witness list, Miller Industries has not had an opportunity to depose her, and the
exhibit purporting to be her file relating to the Insurance Policies has not been authenticated. Ms. Young attests
under oath that she is an Underwriter for the Insurance Professionals, a managing general agency, for the Road One
insurance contract. Young Aff., ¶ 2; [Court Doc. No. 46-3, Deposition of Carl Wellborn ("Wellborn Dep."), p. 26].
She also indicates that she was responsible for maintaining certain records pertaining to the Insurance Policies.
Young Aff., ¶ 2. Thus, Ms. Young's Affidavit comports with the requirements of Fed. R. Civ. P. 56(e). To the
extent Transcontinental expects to call Ms. Young as a witness at trial, the Court will allow Miller Industries to
depose her despite the close of discovery.

4

However, Road One's towing insurance application lists the 8503 Hilltop Drive address for Road One. Young Aff., Ex. A. Further, the address listed for Road One in several places in Ms. Young's file is the Hilltop Drive address. Young Aff., Ex. A, p. 9, 11, 52,

The Insurance Policies consisted of a commercial auto/inland marine insurance policy, number 226712315, and a commercial general liability insurance policy, number 226712329. They covered the time period from December 31, 2000 to December 31, 2001. Young Aff., Ex. A, pp. 27-44. It appears that the Insurance Policies covered a number of listed insured towing companies, some of which were Road One subsidiaries and some of which were Miller Industries subsidiaries. Maynord Dep., pp. 12-20; Young Aff., Ex. A, pp. 51-58. Under the terms of the Insurance Policies, Transcontinental settled numerous claims submitted by Road One and other named insured towing companies. Transcontinental paid settlement amounts to claimants that, in many cases, included a deductible for which Road One was responsible under the terms of the Insurance Policies. The Insurance Policies required Road One to reimburse Transcontinental for deductible amounts that Transcontinental paid on Road One's behalf. Transcontinental alleges that it paid "at least $896,027.58" in deductibles that Road One has failed to reimburse. [Court Doc. No. 1-1]. Transcontinental and Miller Industries did not enter into any contract under which Miller Industries would be responsible for Road One's deductibles, and Transcontinental never billed Miller Industries for the deductible amounts it alleges Road One owes it. Mish Aff., ¶¶ 16, 19. Transcontinental has brought this action against both Road One and Miller Industries for reimbursement of the deductibles paid pursuant to the Insurance Policies.

Miller Industries maintains that Road One and Miller Industries are entirely separate

corporations. Road One and Miller Industries had separate bank accounts and payroll accounts and Road One had its own officers and directors. Maynord Aff., ¶ 18, 25; Mish Aff., ¶ 15. However, Mr. Maynord testified at his deposition that Road One's and Miller Industries' towing services subsidiaries all received paychecks from a central payroll account. Maynord Dep., pp. 12-20. Miller Industries also asserts that it maintained separate minute books from Road One and that it conducted meetings separate from the meetings involving officers and employees of Miller Industries. Maynord Aff., ¶¶ 26-27. Road One had $32 million in stockholder equity at the end of its first fiscal year, and it showed a shareholder equity of $6.5 million on April 30, 2001, four months after Transcontinental issued the Insurance Policies. *Id.* at ¶¶ 28-31. In addition, Road One's policies and procedures were separate from Miller Industries. *Id.* at ¶¶ 32-34.

Road One also maintained separate phone numbers and a separate facsimile number from Miller Industries. Maynord Aff., ¶ 14. It also employed about 100 employees during the height of its operations. These Road One employees had benefits and health insurance separate from those offered to Miller Industries' employees. *Id.* at ¶ 15.

When Road One's lease expired at the Basswood Drive address in 2001, it rented office space for some period of time from Miller Towing Equipment, Inc. at the 8503 Hilltop Drive address. Maynord Aff., ¶ 17; Madonia Dep., p. 70; Maynord Dep., pp. 11-12. The record does not reveal whether a formal lease agreement existed or whether any rental payments were made. *See* Madonia Dep., p. 71. Road One occupied offices on the second floor of the office building owned by Miller Towing Equipment, Inc. Maynord Dep., pp. 75-76.

Miller Industries does not deny that Road One and Miller Industries shared corporate

6

officers at various times. For example, Jeffrey Badgley signed Miller Industries' 2000 Annual Report as its President and CEO. Young Aff., Ex. A, p. 8. Mr. Badgley is also listed as the President and CEO of Road One on Transcontinental's towing insurance application for Road One. Young Aff., Ex. A; *see also* [Court Doc. No. 46-3, Deposition of Jeffrey Badgley ("Badgley Dep."), pp. 21, 27, 28; Court Doc. No. 46-6, Collective Exhibit 3, pp. 15-20]. Mr. Badgley also acknowledges being the sole director of Road One and of many of the towing operations owned by Road One and/or Miller Industries. Badgley Dep., p. 46; [Court Doc. No. 46-4, Collective Exhibit 2, pp. 10-13]. Since the early 1990s Mr. Badgley's paycheck has come from Miller Industries Towing Equipment, Inc., and he has never received a paycheck from Road One. Badgley Dep., p. 52. Vincent Mish acknowledges being the Vice President and CFO of Miller Industries, and he is also listed as the Vice President, Treasurer, and CFO of Road One on its towing insurance application with Transcontinental. Mish Aff., ¶ 3; Young Aff., Ex. A, p. 27; Mish Dep., p. 25. Frank Madonia is listed as Road One's general counsel on its towing insurance application, and the parties also recognize him as the general counsel for Miller Industries. Young Aff., Ex. A, p. 27; Maynord Dep., p. 18; *see also* Wellborn Dep., p. 23. John Maynord is the current president of Road One, and it appears from the record that he became President in August of 2003. Maynord Aff., ¶ 3; [Court Doc. No. 46-6, Collective Exhibit 3, p. 18]. In August of 2002, Mr. Maynord was the CFO for Road One. [Court Doc. No. 46-4, Collective Exhibit 2, p. 8].

In August of 2002, the Board of Directors for Miller Industries directed Road One's management or Miller Industries' management to sell Road One's and possibly Miller Industries' towing company operations. Badgley Dep., p. 41-43; Mish Dep., p. 75; [Court Doc.

No. 46-4, Collective Exhibit 2, p. 8]. The Board directed Mr. Badgley, Mr. Mish, and Mr.

Madonia to negotiate the sales. Mish Dep., p. 75. Mr. Badgley conducted a "fair amount of the

negotiating" for the sale of the towing services subsidiaries, and Mr. Maynord assisted with

closing the sales. Maynord Dep., p. 64. Many of the sales of the individual towing operations

occurred in 2002. *Id.* at p. 85. By the end of 2003, all of Road One's and Miller Industries'

towing services had been sold or closed. Badgley Dep., p. 67. It is unclear the extent to which

Road One informed Transcontinental that it was selling all of the insured towing operations.

Maynord Dep., p. 86, 87; Worbetz Dep., p. 134; [Court Doc. No. 49-3, p. 4-9].

At a certain point in time, Tootie Parker, the contact for receiving claims for

reimbursement from Transcontinental, began placing insurance claim invoices into a cabinet

after Road One no longer had an accounts payable department to which she could submit the

invoices for payment. [Court Doc. No. 46-3, Deposition of Ruby Sutherland ("Sutherland

Dep."), pp. 42-43, 47, 82]. Transcontinental submitted invoices to Road One through Ms. Parker

that Road One did not pay. Sutherland Dep., p. 44. Ms. Parker never informed

Transcontinental's broker that Road One no longer had an accounts payable department to which

she could submit the invoices for payment, although its broker asked her why the invoices had

not been paid. *Id.* at 44-46.

In March and April of 2003, Ms. Parker asked Transcontinental's agent to submit

invoices for payment and asked for verification information for certain settlement amounts.

[Court Doc. No. 46-5, Collective Exhibit 2, pp. 4, 7]. She also informed Transcontinental's

agents that she had submitted invoices to Road One's accounts payable department for payment.

Sutherland Dep., p. 48. She has "no idea" why she did not inform Transcontinental's agents that

8

Road One no longer had an accounts payable department to which she could submit Transcontinental's invoices. *Id.* at 46. In November of 2003, Ms. Parker continued to send email messages to Transcontinental's agent requesting information about invoices Transcontinental had sent Road One. [Court Doc. No. 46-5, Collective Exhibit 2, pp. 15, 18, 22]. On December 17, 2003, Ms. Parker emailed Transcontinental's agent informing him that she no longer worked for Road One and asking him to contact the collection attorney Transcontinental had hired to collect its deductible reimbursements from Road One. *Id.* at p. 23. Ms. Parker still insisted that Transcontinental should be sending invoices for deductibles paid on Road One's behalf to Road One. *Id.* As late as February of 2004, Mr. Maynord represented to Transcontinental that Road One would pay the deductibles it owed to Transcontinental. [Court Doc. No. 46-3, Deposition of Mitch Worbetz ("Worbetz Dep."), pp. 109-111]; *see also* [Court Doc. No. 46-4, Collective Exhibit 2, pp. 21-22]. Ms. Parker continued to communicate with Transcontinental's agent in April of 2004 regarding open claims for Road One. [Court Doc. No. 46-5, Collective Exhibit 2, p. 24].

The employees who remained at Road One at the time of its insolvency were transferred to Miller Industries' other operations. Badgley Dep., p. 68. Mr. Maynord, Road One's former President, now works for Miller Industries. [Court Doc. No. 46-3, Deposition of John Maynord ("Maynord Dep."), p. 5]. Tootie Parker, Road One's contact for Transcontinental's claims for reimbursement, now works for Miller Industries Towing Equipment. *Id.* at p. 87; Sutherland Dep., p. 5. It also appears that Ms. Parker has traded services with other Miller Industries' subsidiaries at various times as needed; however, her paychecks come from Miller Towing Equipment, Inc. Sutherland Dep., p. 8.

## II.      Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations.  The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435.  The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy*

10

*Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## III. Analysis

### A. Choice of Law

The parties disagree about whether Delaware law or Tennessee law should apply to this action. Where a district court's jurisdiction is based on diversity, the court "must apply the choice-of-law rules of the forum state." *NGK Metals Corp. v. National Union Fire Ins. Co.*, 2005 WL 1115925, *4 (E.D. Tenn. 2005) (quoting *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, this court will apply Tennessee's choice-of-law rules.

Transcontinental argues that Delaware law should apply because Road One is incorporated in Delaware, citing *United States v. Daugherty*, 599 F.Supp. 671, 673 (E.D. Tenn. 1984). In contrast, Miller Industries argues that Tennessee law should apply because the issue pertains to an alleged breach of an insurance contract and Road One conducts all of its business in Tennessee and has no connection to Delaware other than being incorporated there. *See NGK Metals Corp.*, 2005 WL 1115925 at *4; Tenn. Code Ann. § 56-7-102.

11

This court has previously stated that "[i]n insurance coverage disputes, Tennessee courts apply the substantive law of the state in which the insurance policy was issued and delivered if there is no choice of law clause in the policy." *NGK Metals Corp.*, 2005 WL 1115925 at *4 (citing *Kustoff v. Stuyvesant Ins. Co.*, 160 Tenn. 208, 22 S.W.2d 356, 358 (Tenn. 1929); *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973); *see also American Modern Home Ins. Co. v. Daniel*, 2003 WL21920939, *2 (E.D. Tenn. 2003); *Standard Construction Co. Inc. v. Maryland Casualty Co.*, 2002 WL 1477886 *5 (W.D. Tenn. 2002). The parties do not allege that the Insurance Policies contain a choice of law provision, and the Court finds none. Miller Industries notes that the Insurance Policies were issued to Road One in Tennessee and that Road One signed the agreement in Tennessee. Therefore, it argues, Tennessee law should apply. Miller Industries also relies on Tenn. Code Ann. § 56-7-102 which states in pertinent part:

> Every policy of insurance, issued to or for the benefit of any citizen or resident of this state on or after July 1, 1907, by any insurance company or association doing business in this state, . . . and every such contract so issued shall be held as made in this state and construed solely according to the laws of this state.

Tenn. Code Ann. § 56-7-102.

In the alternative, Miller Industries argues, because Transcontinental is essentially arguing that Miller Industries and Road One defrauded it, Tennessee's choice-of-law rule applicable to torts should apply. Under Tennessee law the state that bears the "most significant relationship" to the tort claim applies. *See Gregory v. Chemical Waste Management, Inc.*, 38 F.Supp.2d 598, 620 (W.D. Tenn. 1996). Miller Industries argues that Tennessee has the most significant relationship to the alleged injuries at issue in this case.

12

Transcontinental argues that because this action involves an issue of whether to pierce a corporate veil, Delaware law should apply because Road One was incorporated in Delaware. In *United States v. Daugherty* this Court stated, "the question whether the [individual officer] may be held liable for the corporation debt under the 'alter ego' theory of piercing the corporate veil must be determined with reference to the law of Kentucky because [the corporation whose veil is to be pierced] was incorporated in that state." 599 F.Supp. at 673. In *Wilton Corp. v. Ashland Castings Corp.*, a corporate veil-piercing case, the Sixth Circuit noted in dicta that "[i]t appears that the choice-of-law rule in Tennessee would also dictate that we apply the substantive law of Ohio because it is the state of Ashland's incorporation." 188 F.3d 670, 673 n.2 (6th Cir. 1999). Ashland was the corporation whose veil the plaintiff wished to pierce. *Id.* at 673. The Sixth Circuit relied on *Daugherty* for its assertion. *Id.* at 673 n.2.

In *Thomas v. Lytle* the district court addressed the choice of law provisions in two separate contracts. 104 F.Supp.2d 906 (M.D. Tenn. 2000). In the first contract the agreement provided that it would be interpreted according to Tennessee law, and the court applied Tennessee law because it was the parties' choice and Tennessee had a substantial relationship to the parties. *Id.* at 926-27. The second agreement provided that New York law should apply. *Id.* at 927. The district court declined to apply New York law in determining whether to pierce the corporate veil of two corporations. *Id.* Instead the court applied Missouri law, noting that "GML is a Missouri corporation and, as such, Missouri has a substantial interest in whether GML's corporate veil is pierced." *Id.* (citing *United States v. Daugherty*, 599 F.Supp. at 673). The court also relied on *Soviet Pan Am Travel Effort v. Travel Committee, Inc.* for its conclusion. 756 F.Supp. 126, 131 (S.D.N.Y. 1991). In *Travel Committee* the district court noted that

13

"[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." 756 F.Supp. at 131. The *Lytle* court also relied on FLETCHER CYCLOPEDIA OF PRIVATE CORPORATIONS § 41.90 (perm. ed. rev. vol. 1999) which states, "[a]lthough the choice of which state's law is to be applied in a diversity case is determined by the law of the forum state, the state of incorporation has the greater interest in determining when and if the corporate veil is to be pierced." 104 F.Supp.2d at 927. The court applied Missouri law because it found that Missouri, "as opposed to New York", had the greater interest in whether the corporate veil should be pierced. *Id.*

The parties do not appear to dispute that Road One breached the Insurance Policies with Transcontinental by failing to reimburse Transcontinental for certain deductibles it paid on behalf of Road One. *See* Sutherland Dep., p. 44. Thus, this action is not about interpreting the terms of the Insurance Policies. Rather, this action pertains to whether Road One's corporate veil should be pierced to allow Transcontinental access to the assets of Miller Industries for reimbursement of deductibles Transcontinental paid on behalf of Road One. Whether to pierce the corporate veil is an issue that is collateral to the issue of interpretation of the Insurance Policies for choice of law questions. *See e.g., United Trade Associates Ltd. v. Dickens & Matson*, 848 F.Supp. 751, 759 (E.D. Mich. 1994). Therefore, the Court will apply Delaware law in this action.

## B.    Piercing the Corporate Veil

Delaware courts have noted that only "exceptional" cases warrant disregarding the corporate form. *Sears, Roebuck & Co. v. Sears*, 744 F.Supp. 1297, 1305 (D. Del. 1990).

Further, "'[p]ersuading a Delaware court to disregard the corporate entity is a difficult task.'" *LaSalle National Bank v. Perelman*, 82 F.Supp.2d 279, 295 (D. Del. 2000) (quoting *Harco National Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *9-10 (Del. Ch. Sept. 19, 1989)). Under Delaware law, two theories for disregarding the corporate entity exist, the "alter ego" theory, otherwise known as "piercing the corporate veil", and the "pure agency" theory. *See e.g. Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 265-72 (D. Del. 1989); *see also Sears*, 744 F.Supp. at 1304; *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426, 432 (D. Del. 2005). Under the first theory,

> [a] subsidiary corporation may be deemed the alter ego of its corporate parent where there is a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined. An alter ego relationship might also lie where a corporate parent exercises complete domination and control over its subsidiary.

*Mobil Oil Corp.*, 718 F.Supp. at 266.

Under this theory, proof of a close connection between the parent and the subsidiary and "less than steadfast" observation of "corporate formalities" is not enough to warrant disregarding the corporate entity. *Mobil Oil Corp.*, 718 F.Supp. at 267. A court may hold a parent liable for the acts of its subsidiary "only if its use of the corporate form would, if left unchecked, work as a fraud or something in the nature of a fraud." *Id.* In explaining the nature of the injury to be suffered, the *Mobil Oil* court clarified that "[f]raud is frequently cited as a basis on which to pierce the corporate veil, but it is not the only one: 'It may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration[s] . . . are involved.'" *Id.* at 268 (quoting *Mabon, Nugent & Co. v. Texas American Energy Corp.*, [1987-1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,674, at p. 98,092

15

(Del.Ch. Jan. 27, 1988) (quoting *Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del. Sup. Ct. 1968)).  However, the "underlying cause of action does not supply the necessary fraud or injustice" because to hold otherwise "would render the fraud or injustice element meaningless, and would sanction bootstrapping."  *Mobil Oil Corp.*, 718 F.Supp. at 268; *Sears*, 744 F.Supp. at 1305.  Further, under this theory "[e]ffectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."  *Wallace v. Cencom Cable Income Partners II*, 752 A.2d 1175, 1184 (Del. Ch.1999); *see also In re Sunstates Corp. Shareholder Litigation*, 788 A.2d 530, 534 (Del. Ch. 2001) (citing *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)).

> As the Fifth Circuit explained in a case interpreting Delaware law:
>
> Under Delaware law, numerous factors are pertinent to an alter ego analysis, but 'no single factor [can] justify a decision to disregard the corporate entity.'  'These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.'

*Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 205 (5th Cir. 1995) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. 1131, 1989 WL 110537 at *5 (Del. Ch. Sept. 19, 1989)); *see also United States v. Golden Acres, Inc.,* 702 F.Supp. 1097, 1104 (D. Del. 1988), *aff'd*, 879 F.2d 860 (3d Cir. 1989)).  However, "[m]ere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity."  *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 32012 *6 (Del. Super. Ct. 1988) (citing *Skouras v. Admiralty Enterprises, Inc.*, 386 A.2d 674 (Del. Ch. 1978)).  In addition, common directors and officers, as well as sole ownership of stock are merely factors to consider in determining whether

16

to pierce the corporate veil. *Ammeraal, Inc.*, 1988 WL 32012 at *6 (citing *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 314 (1973)).

Under the "pure agency theory" the two corporations do not have to be a parent and subsidiary, nor is complete domination and control necessary. *Mobil Oil Corp.*, 718 F.Supp. at 271 (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477-78 (3d Cir. 1988) (applying Delaware law)). However, "[a] vital prerequisite to imposing liability based upon customary agency principles is finding a close connection between the relationship of the two corporations and the cause of action." *Mobil Oil Corp.*, 718 F.Supp. at 271 (citing *Phoenix Canada Oil*, 842 F.2d at 1477-78); *Sears*, 744 F.Supp. at 1305. The relevant question for this theory is whether one corporation, in this case Miller Industries, "directed the specific actions of the alleged agent", in this case Road One, that resulted in the injury alleged. *Mobil Oil Corp.*, 718 F.Supp. at 271-72.

The Delaware Supreme Court has noted that

> In the parent-subsidiary context, it is appropriate to consider the extent of control exercised by the parent over the subsidiary in order to determine the scope of the agency relationship. . . . 'Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction.'

*Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1035 (Del. Sup. Ct. 2003) (quoting *C.R. Bard Inc. v. Guidant Corp.*, 997 F.Supp. 556, 560 (D. Del. 1998)). The focus for this test is "'the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement to the plaintiff's claim.'" *Ethypharm S.A. France*, 388 F.Supp.2d 426, 432 (D. Del. 2005) (quoting *C.R. Bard, Inc.*, 997 F.Supp. at 560 (D. Del. 1998)); *see also Chrysler Corp.*, 822 A.2d at 1035.

Miller Industries argues that Transcontinental may not proceed with its "pure agency" theory of liability under Delaware law because the agency theory was not pled in the complaint. Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "All the rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which its rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Under Delaware law, "'[a]n essential element of agency is that the agent has the power to act on behalf of the principal with third persons." *Ammeraal*, 1988 WL 32012, *4 (Del. Super. 1988). Agency may be express or implied. *Id.* Further, an "essential factor in the relation of the principal-agent is that the agent do something at the behest and for the benefit of the principal. . . . The right to control the conduct of an agent is the test of agency." *Id.* (citing 2A C.J.S. *Agency* § 5).

The complaint states in relevant part:

> Upon information and belief, Defendant Road One is a wholly owned subsidiary of Defendant Miller Industries, and at all times relevant hereto was under the complete domination and control of Miller Industries. During 2003, Miller Industries caused all or substantially all of the assets of Road One to be sold to third parties. Upon information and belief, Miller Industries received the proceeds of the sale of Road One's assets, and Miller Industries agreed to assume liability for any contractual obligations of Road One, including obligations under insurance contracts. Therefore, Miller Industries is liable for Road One's obligations to Transcontinental.

[Court Doc. No. 1-1]. In this case Transcontinental asserts that Road One was a wholly-owned subsidiary of Miller Industries, subject to its complete domination and control. *Id.* Further, the complaint alleges that Miller Industries agreed to allow Road One to bind Miller Industries for

18

Road One's contractual obligations to third parties. The complaint also asserts that Miller Industries directed the sale of Road One's assets and asserts that the proceeds from the sale of Road One's assets went to Miller Industries. *See Ammeraal, Inc.* 1988 WL 32012 at *4.

Moreover, it appears that Miller Industries was well aware that Transcontinental was seeking to hold Miller Industries liable on a theory of disregard of the corporate identity because Miller Industries argues that it is not liable under such a theory pursuant to Tennessee law. In the analogous context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this court has noted that "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint which would entitle the plaintiff to relief." *Benford v. Smith*, 2005 WL 1325003 (E.D. Tenn. 2005) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley*, 355 U.S. at 45-46)). When this rule is applied in the instant action, it appears that based on the allegations in the complaint, Transcontinental may prove a set of facts which will entitle it to relief from Miller Industries. If Transcontinental can prove that Miller Industries directed Road One to sell off its assets and direct the proceeds to Miller Industries so that Road One would be unable to meet its obligations to Transcontinental, Transcontinental may be entitled to relief under Delaware law's agency theory of disregarding the corporate entity. *See Mobil Oil Corp.*, 718 F.Supp. at 271-72. Therefore, the Court concludes that Transcontinental adequately pled its theory of liability in its complaint and Miller Industries received adequate notice that Transcontinental was seeking to disregard Road One's corporate entity under the pure agency theory.

Applying the agency theory to the instant action, issues of fact exist regarding the extent

19

to which Miller Industries directed the specific act of Road One's sale of its assets. The record

suggests that this sale of the assets of Road One left it insolvent and unable to pay its deductibles

to Transcontinental. The record indicates that Miller Industries' Board of Directors directed

certain Miller Industries/Road One officers and executives to sell all of Road One's towing

operations. Badgley Dep., p. 41-43; Mish Dep., p. 75; [Court Doc. No. 46-4, Collective Exhibit

2, p. 8]. Mr. Badgley testified that the Board Meeting Minutes from August 2, 2002 reflect

Miller Industries' Board's direction to the management of Road One that "after not being able to

sell RoadOne operations as a whole, they were telling management to go ahead and get rid of the

rest of RoadOne operations." Badgley Dep., p. 43. Thus, Miller Industries was directing the

very activities Transcontinental alleges caused it injury–the selling of all of the towing service

operations that left Road One insolvent. The record is unclear regarding how the proceeds from

the sales of the towing services subsidiaries were distributed.

Other factors suggest that Miller Industries controlled the actions of Road One and that

Road One often acted at Miller Industries' behest. Many of the Road One officers and directors

were also Miller Industries officers and directors. [Court Doc. No. 46-6, pp. 15-20]. Mr.

Madonia, Miller Industries' general counsel also appeared to be Road One's counsel at times,

and the record suggests that he negotiated the Insurance Policies with Transcontinental. Young

Aff., Ex. A, pp. 27-32. Miller Industries apparently authorized Road One to manage all of its

towing service subsidiaries at one point in time. Maynord Dep., pp. 12-20. Miller Industries

was Road One's sole shareholder, and although Mr. Badgley was the President of Road One at

certain times while also an officer of Miller Industries, Mr. Badgley always received his

paychecks from Miller Industries. Badgley Dep., pp. 24-25, 52. Further, it appears that Road

20

One employee, Tootie Parker, continued to suggest to Transcontinental that Road One would pay the deductibles it owed Transcontinental even after she became an employee of Miller Industries' other operation, Miller Towing Equipment, Inc. [Court Doc. No. 46-5, Collective Exhibit 2, pp. 15, 18, 22-24]; Sutherland Dep., p. 8.

Thus, when viewing the record in the light most favorable to Transcontinental, it appears that Miller Industries and Road One had a very close arrangement. Road One had authority to manage Miller Industries' subsidiaries, and Miller Industries ordered Road One to sell both companies' towing services operations. Although, it is not entirely clear that the "pure agency" theory under Delaware law exists in this action, issues of fact regarding the extent to which Miller Industries directed the acts that allegedly injured Transcontinental preclude the granting of Miller Industries' motion for summary judgment.

Although the question of whether to apply the "alter ego" theory for piercing the corporate veil under Delaware law is a more difficult question, other district courts have acknowledged that the question of whether to pierce a corporate veil is "undeniably fact intensive." *See e.g. Rondout Valley Central Sch. Dist. v. Coneco Corp.*, 339 F.Supp.2d 425, 444 (N.D.N.Y. 2004). It is certainly far from clear from the factual record that Road One was established as a complete sham to avoid corporate liabilities. However, factual issues exist regarding the relevant factors for the "alter ego" theory under Delaware law. Where federal courts have been uncertain whether the facts warrant piercing the corporate veil they have denied summary judgment on the issue in order to present the evidence to a jury. For example, the court in *Coneco Corp.* noted that "[a]lthough the Court will not hold as a matter of law that the evidence presented is a sufficient basis upon which to pierce the corporate veils of [the defendant

corporations], it is apparent that the evidence creates sufficient factual issues for a jury." 339 F.Supp.2d at 451. *See also MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 64 (2d Cir. 2001) (noting that "our case law teaches determining whether to pierce the corporate veil is a very fact specific inquiry involving a multitude of factors"); *Ziegler v. Inabata of America, Inc.*, 316 F.Supp.2d 908, 918 (D. Col. 2004) (denying summary judgment on veil-piercing claim, but noting that the plaintiff "must present substantially more evidence at trial to prevail on this claim").

Delaware law requires the analysis of several factors to determine whether a corporate entity should be disregarded under the "alter ego" theory. *See Golden Acres, Inc.,* 702 F.Supp. at 1104. An analysis of the factors reveals that some factors weigh in favor of Miller Industries' position while others favor Transcontinental's position. The record suggests that Road One was adequately capitalized at its inception, but that Miller Industries ordered Road One to sell off its towing services operations which were its source of income. Maynord Aff., ¶¶ 28-31; [Court Doc. No. 46-4, Collective Exhibit 2, p. 8]. The record is unclear about how the proceeds from the sale of Road One's towing operations were distributed. However, it is clear that Road One became insolvent after it accomplished the sale of the towing services operations. [Court Doc. No. 48]. The record is unclear regarding whether dividends were paid from Road One and what corporate records Road One maintained. Although not dispositive regarding whether Road One's veil should be pierced, Road One and Miller Industries shared corporate officers and directors. The record is mixed regarding whether corporate formalities were maintained. The evidence suggests that Miller Industries and Road One kept separate payroll accounts, separate offices, and separate policies and procedures. Maynord Aff., ¶¶ 13-18, 25-27, 32-34; Mish Aff.,

¶¶ 11-15, 17-18. However, some testimony suggests intermingling of corporate functions. For example, Mr. Badgley testified that although he has worked at various times as President of Road One, he always received his paycheck from Miller Industries. Badgley Dep., p. 52. In addition, Mr. Maynord testified that all of the various towing service subsidiaries for both Road One and Miller Industries received payroll checks from a central payroll account that applied to all the towing service subsidiaries. Maynord Dep., pp. 12-20. Road One and Miller Industries clearly shared an office building for a number of years, although Miller Industries maintains that Road One's offices were segregated on a separate floor with its own telephone and facsimile numbers. However, it is unclear whether Road One and Miller Industries maintained a lease agreement or whether Road One ever paid Miller Industries rent for the office space. When Road One became insolvent it appears that several Road One employees became assimilated into other Miller Industries' operations. Further, it appears that Miller Industries shared the services of some employees with its other subsidiaries. Sutherland Dep., p. 8; Maynord Dep., p. 5. Road One and Miller Industries' businesses were also intertwined because Road One managed its own set of towing services subsidiaries, as well as Miller Industries' towing services subsidiaries. Indeed, it appears that the Miller Industries' towing services subsidiaries were insured under the Insurance Policies between Road One and Transcontinental. Young Aff., Ex. A, pp. 51-58; Maynord Dep., p. 12-20.

Further, it appears that Miller Industries controlled Road One's business plan. The Miller Industries Board of Directors ordered Road One management to sell the towing services subsidiaries. This move contributed to Road One's ultimate insolvency, and the Court has no way of knowing how the proceeds of the towing services operations were distributed. The

23

record indicates that Transcontinental employees were not aware of Miller Industries upon entering the Insurance Policies with Road One, and Miller Industries never agreed to be responsible for the deductibles under the Insurance Policies. Worbetz Dep., pp. 49-51; Mish. Aff., ¶¶ 16; [Court Doc. Nos. 32-4, 32-6, 32-7]. However, it appears that Ms. Parker and Mr. Maynord continued to represent to Transcontinental that Road One would pay the deductibles it owed to Transcontinental long after Ms. Parker had begun working for Miller Industries and Ms. Parker and Mr. Maynord knew that Transcontinental would not be able to pay the deductibles. [Court Doc. No. 46-5, Collective Exhibit 2, pp. 3-25]; Worbetz Dep., pp. 110-111. The record is unclear whether, as Transcontinental suggests, these Road One and Miller Industries employees deliberately "ran interference" to keep Transcontinental from pressing its claims against Road One while Miller Industries siphoned off Road One's assets; however, the Court concludes that the issue cannot be resolved on summary judgment. For these reasons, Miller Industries' motion for summary judgment will be DENIED.

## IV. Conclusion

After reviewing the record and the applicable law, the Court concludes that genuine issues of material fact exist regarding Transcontinental's claims against defendant Miller Industries regarding whether defendant Road One's corporate veil should be pierced.

A separate order will enter.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
