UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY, ) ) ) *Plaintiff*, ) ) v. ) ) ROADONE, INC.; and ) MILLER INDUSTRIES, ) ) *Defendants*. ) | No. 1:04-cv-273 *Edgar / Carter* |

**MEMORANDUM OPINION**

**I.     Background**

Transcontinental Insurance Company ("Transcontinental") issued a casualty insurance policy to Road One, Inc., a Delaware Corporation ("Road One"). Road One is a wholly owned subsidiary of Miller Industries, Inc. ("Miller"). Transcontinental claims that it is owed a considerable amount of money for deductibles it paid under its policy. Road One is in Chapter 7 bankruptcy proceedings, and is therefore protected by the bankruptcy stay. In this case Transcontinental seeks to collect its alleged debt from Miller by "piercing the corporate veil," thereby ignoring the corporate form. On February 8 and 9, 2006, this Court, sitting without a jury, conducted a trial on the issue of liability only, reserving the issue of damages for a separate trial, if necessary. For the reasons set forth herein, this Court concludes that Miller has no liability to Transcontinental. Therefore, **JUDGMENT** will enter for Miller.

-1-

## II. Applicable Law

This Court has previously determined that Delaware law applies in this case. Delaware courts have noted that only "exceptional" cases warrant disregarding the corporate form. *Sears, Roebuck & Co. v. Sears*, 744 F.Supp. 1297, 1305 (D. Del. 1990). Further, "'[p]ersuading a Delaware court to disregard the corporate entity is a difficult task.'" *LaSalle National Bank v. Perelman*, 82 F.Supp.2d 279, 295 (D. Del. 2000) (quoting *Harco National Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *9-10 (Del. Ch. Sept. 19, 1989)). Under Delaware law, courts may disregard the corporate entity under the "alter ego" theory, otherwise known as "piercing the corporate veil." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 265-72 (D. Del. 1989). Courts may also impose liability upon a parent corporation under "customary agency principles," known as the "pure agency" theory. *See id.*; *see also Sears*, 744 F.Supp. at 1304; *Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F.Supp.2d 426, 432 (D. Del. 2005).

At the beginning of the trial, Transcontinental contended that it should be able to obtain damages from Miller under the "alter ego" theory, as well as under the "agency" theory. However, after it became apparent during the trial that Transcontinental had not offered any evidence that ignoring the corporate form was necessary to prevent something in the nature of a fraud, Transcontinental conceded that this theory is untenable. *See Mobil Oil Corp.*, 718 F.Supp. at 267. However, Transcontinental continues to assert that it is nevertheless is entitled to prevail on an "agency" or "pure agency" theory which, Transcontinental says, does not require proof of fraud or anything similar thereto.

Delaware courts have noted that:

> When legal liability is predicated on principles of agency, the existence and entity of the agent are not ignored or set aside, but affirmed, and the principal held [liable] precisely because the agent did act in the course of his employment and within the scope of his authority. The very opposite is true when the subsidiary's corporate entity is set aside and ignored and the parent held liable.

*Stinnes Interoil, Inc. v. Petrokey Corp.*, 1983 WL 21115, *2 (Del. Super. 1983) (quoting *Lowendahl v. Baltimore & Ohio Railroad Co.*, 287 N.Y.S. 62, 74 (1936)). *See also Mobil Oil*, 718 F.Supp. at 271.

Under the "pure agency" theory the two corporations do not have to be a parent and subsidiary, nor is complete domination and control necessary. *Mobil Oil Corp.*, 718 F.Supp. at 271 (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477-78 (3d Cir. 1988) (applying Delaware law)). However, "[a] vital prerequisite to imposing liability based upon customary agency principles is finding a close connection between the relationship of the two corporations and the cause of action." *Mobil Oil Corp.*, 718 F.Supp. at 271 (citing *Phoenix Canada Oil*, 842 F.2d at 1477-78); *Sears*, 744 F.Supp. at 1305. The relevant question for this theory is whether one corporation, in this case Miller Industries, "directed the specific actions of the alleged agent," in this case Road One, that resulted in the injury alleged. *Mobil Oil Corp.*, 718 F.Supp. at 271-72.

The Delaware Supreme Court has noted that

> In the parent-subsidiary context, it is appropriate to consider the extent of control exercised by the parent over the subsidiary in order to determine the scope of the agency relationship. . . . 'Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction.'

*Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1035 (Del. Sup. Ct. 2003)

(quoting *C.R. Bard Inc. v. Guidant Corp.*, 997 F.Supp. 556, 560 (D. Del. 1998)).  The focus for this test is "'the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement to the plaintiff's claim.'" *Ethypharm S.A. France*, 388 F.Supp.2d 426, 432 (D. Del. 2005) (quoting *C.R. Bard, Inc.*, 997 F.Supp. at 560 (D. Del. 1998)); *see also Chrysler Corp.*, 822 A.2d at 1035.

> In order to establish liability of a parent company for the actions of its subsidiary, it must be demonstrated '[n]ot only [that] an arrangement exist[s] between the two corporations so that one acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing.' . . . Therefore, the parent must be shown to have exerted control over the subsidiary in connection with the very conduct at issue in the lawsuit in order to find the parent liable for such conduct.

*Ace & Co., Inc. v. BICC Cables Corp.*, 2002 WL 32136788 *1 (D. Del. 2002) (quoting *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988)).

Delaware courts recognize two main theories of agency liability - actual authority and apparent authority.  *See Albert v. Alex Brown Mgmt. Serv.*, 2005 WL 2130607 *10 (Del. Ch. 2005).  As the court noted in *Albert*,

> Actual authority is that authority which a principal expressly or implicitly grants to an agent. . . . Apparent authority is that authority which, though not actually granted, the principal knowingly or negligently permits an agent to exercise, or which he holds him out as possessing.  In order to hold a defendant liable under apparent authority, a plaintiff must show reliance on indicia of authority originated by principal, and such reliance must have been reasonable.

2005 WL 2130607, at *10.  In addition, under Delaware law, the agents must be acting for *disclosed* principals.  *Phoenix Canada Oil Co., Ltd.*, 842 F.2d at 1478; *see also, Stinnes Interoil, Inc. v. Petrokey Corp.*, 1983 WL 21115, *2 (Del. Super. 1983).

The court in *In re Sunstates Corp. Shareholder Litigation* made clear that "to pierce the corporate veil based on an agency or 'alter ego' theory, the 'corporation must be a sham and exist for no other purpose than as a vehicle for fraud.'" *In re Sunstates Corp. Shareholder Litigation*, 788 A.2d 530, 534 (Del. Ch. 2001) (citing *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)). However, other Delaware courts appear to disagree about whether fraud is necessary under a pure agency analysis. For example, in *Grasty v. Michail*, the court noted that "in Delaware, a parent corporation can be held liable for its subsidiary's actions when the subsidiary is acting as the agent for the principal parent corporation, even when there is no fraud or inequity. 2004 WL 396388 (Del. Super. 2004) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 658 F.Supp. 1061, 1084 (D. Del. 1987) (noting that "[o]ther courts have based liability of the parent on the principles of agency, without reference to fraud or inequity")). In *Japan Petroleum Co. (Nigeria) Ltd.*, the district court noted that "[a] number of courts have recognized that the agency theory exists independently of those theories which are based on disregard of the corporate entity, and which require a showing of fraud or inequity." 456 F.Supp. at 839. The court further concluded that "plaintiff is not required to prove fraud or inequity in order to support its claim of agency relationship . . ." *Id.* at 840. *See also, Mabon, Nugent & Co. v. Texas American Energy Corp.*, 1988 WL 5492, *4 (Del. Ch. 1988); *Stinnes Interoil, Inc.*, 1983 WL 21115, at *2 (noting that under agency theory "fraud or illegal purpose are not absolutely required").

**III.   Analysis**

Miller is a holding company with several wholly owned subsidiaries. Its primary

business is manufacturing wreckers and related vehicle towing equipment. In the mid 1990's Miller decided to get into the towing business itself. It formed Road One to accomplish this. The idea was to create a national towing company, develop a brand name, and thereby consolidate a fragmented industry. To this end Road One purchased numerous local wrecker services, which became subsidiaries of Road One. For tax and negotiating reasons, a few such local towing companies were purchased by Miller directly, and became subsidiaries of Miller. All of the towing operations were, however, managed by Road One.

Road One was profitable for several years. In 2000 Road One began to sell a few of its operations that were unprofitable. The events of September 11, 2001 severely impacted the trucking and transportation industry. At this time, the bank, which had advanced credit to Road One under a revolving loan agreement, devalued Road One's assets that were the security for the loan and accelerated payments of the bank loan. In early 2002 the bank loan was declared by the bank to be in default. It became evident that all of the Road One assets would have to be sold to
pay off the bank.

In August 2002 Miller, as required by Delaware law, authorized Road One to sell its assets. *See* 8 Del. C. § 271. Road One then proceeded to sell all the towing operations. Most of the money acquired thereby went to pay the bank. There were some funds left over that were used to pay other creditors, but certainly not all of them, since Road One eventually went into bankruptcy.

The insurance that gives rise to this litigation was issued by Transcontinental to Road

-6-

One for the period December 31, 2000 through December 30, 2001. There were two policies, one for commercial vehicle coverage and one for general commercial liability coverage. The coverage was actually acquired on behalf of Road One through an insurance brokerage firm, Marsh McClennan. The insurance was, of course, acquired prior to September 11th 1001. No misrepresentations about Road One were made to Transcontinental; and in fact Road One's financial situation was publically available through SEC 10K reports and other sources. The policies were issued to Road One, and the premiums were paid by Road One. There is no evidence that Transcontinental ever looked to Miller for premiums, deductible reimbursement, or any other obligations under the policies.

The insurance policies contained a $25,000 deductible. Transcontinental took it upon itself to pay claims, even though the claims may have been less than the $25,000 deductible. Transcontinental would then bill Road One for the amount of the deductible it had paid out in claims. Road One paid Transcontinental for these deductibles through March 2002. In the meantime Road One was struggling to pay its bank. Transcontinental did not bill Road One again for deductibles until April 2003. This bill contained what Road One perceived to be several mistakes, and Road One did not think that the bill reflected some credits what were due it in the form of a premium deposit refund, and subrogation recoveries.

While it not clear whether avoiding the corporate form under the "agency" theory requires a showing of an element of sham or fraud, it is nonetheless very clear that Transcontinental must, prove by a preponderance of the evidence that Road One acted with the actual or apparent authority of Miller under familiar principles of agency law.

-7-

Transcontinental has failed to carry that burden. In fact there is no evidence at all which would suggest that Miller either expressly or impliedly gave Road One authority to purchase insurance from Transcontinental or that Miller in any way held out Road One as acting on its behalf in insurance, or other, matters. In fact, there is no evidence that Transcontinental, until the commencement of this litigation, even knew of Miller's existence, ever looked to Miller or in any way relied upon Miller to fulfill Road One's obligations under the insurance.

**IV.  Conclusion**

The facts make it abundantly clear that Transcontinental is not entitled to recover any insurance funds from Miller, whatever the merits of its claim against Road One may be. Transcontinental is relegated to pursuing whatever claim it may have against Road One in Road One's bankruptcy proceedings.

The Clerk of Court will enter judgment in favor of Miller and against Transcontinental. The Clerk will also close the case file.

*/s/  R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
